UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                  )
UNITED STATES OF AMERICA          )
                                  )
    v.                            )    CR No.  11-186 S
                                  )
JOSEPH CARAMADRE; and             )
RAYMOUR RADHAKRISHNAN,            )
                                  )
        Defendants.               )
_____)

**OPINION AND ORDER**

WILLIAM E. SMITH, United States District Judge.

Before the Court are motions to suppress Rule 15 depositions filed by Defendants Joseph Caramadre and Raymour Radhakrishnan. After careful review of the parties' submissions and argument on the motions, the Court denies the motions for the reasons set forth below.

I.  Background

In September 2009, government agents were conducting an investigation of four targets (the "Targets") who were allegedly engaged in a fraudulent scheme involving various investment vehicles. As part of the alleged illegal scheme, two of the Targets (now-Defendants Caramadre and Radhakrishnan) approached terminally-ill individuals and offered them each several thousand dollars to serve as measuring lives for the bonds and annuities involved in the investment scheme. Caramadre and

Radhakrishnan allegedly made material misrepresentations or fraudulently concealed material information in order to induce these terminally-ill individuals to sign the documents needed to execute the scheme. The Targets would then submit applications to financial institutions and purchase the annuities, which would effectively operate as fail-safe investment instruments; the success of the investment strategy designed by the Targets hinged on the ill individuals dying shortly after they signed up as measuring lives.

In an unusual step, the government moved in this Court for an order allowing it to take the depositions of nine of the terminally-ill witnesses, pursuant to Rule 15 of the Federal Rules of Criminal Procedure. Rule 15 allows a court to order pre-trial depositions in order to preserve testimony for trial where the moving party demonstrates that there are "exceptional circumstances" and that preserving the testimony is "in the interest of justice." Fed. R. Crim. P. 15(a)(1).

In an Opinion and Order issued on September 22, 2009, the Court concluded that Rule 15 contemplates pre-indictment depositions and that the Court could authorize a pre-indictment deposition in the appropriate circumstances. See In re Grand Jury Proceedings, 697 F. Supp. 2d 262, 266 (D.R.I. 2010)

(redacted for publication).[1] Based on the proffer made by the government, the Court concluded that, under the exceptional circumstances presented, where material witnesses were terminally-ill and expected to die prior to trial, it was in the interest of justice to allow the government to take Rule 15 depositions, so long as Defendants' trial rights were properly preserved. Accordingly, the Court granted the government's motion. Mindful of the constitutional ramifications discussed below, however, the Court attached the following conditions (among others): that the Targets be given the opportunity to be represented by counsel and to examine the witnesses at the depositions; and that the government fully disclose to the Targets all materials that would be disclosed in the usual course under Rule 16 of the Federal Rules of Criminal Procedure, including any and all Brady and Jencks materials. The Court further stated that, while it

> may not order that the Government refrain from using such depositions in the Grand Jury, the Court takes the government counsel at their word that this is not the purpose and intent of the depositions; [and] use of the depositions at Grand Jury therefore would subject counsel to the remedial disciplinary authority of this Court.

---

[1] The September 2009 Opinion was not unsealed and published with redactions until March 19, 2010. See generally In re Grand Jury Proceedings, 697 F. Supp. 2d 262 (D.R.I. 2010). However, because the government and the Targets had the benefit of the Opinion once it was issued under seal on September 22, 2009, the Court refers to it as the September 2009 Opinion.

In re Grand Jury Proceedings, 697 F. Supp. 2d at 275. The Court expressly reserved the issue of whether the depositions would be admissible at trial. The Targets thereafter filed an appeal from the September 2009 Opinion, which the First Circuit denied as interlocutory.

Though the government moved to take the depositions of nine potential witnesses, three of those witnesses became unavailable before the government could depose them (two died before their depositions could be taken and one was too ill to be deposed). Before the depositions were conducted and in accordance with the September 2009 Opinion, the government provided to the Targets the Brady and Jencks materials it had in its possession. Between September 30, 2009 and April 21, 2010, the government deposed six potential witnesses: Richard Wiley, Edwin Rodriguez, Robert Mizzoni, Patrick Garvey, Leon Bradshaw, and Anthony Pitocco. The Targets deposed one witness, Charles Buckman. Caramadre was present, either in person or by videoconference, for each of the Rule 15 depositions, except for that of Wiley (whose deposition Caramadre elected not to attend). Radhakrishnan was present for all of the depositions. During the depositions, Caramadre and Radhakrishnan were represented by skilled counsel: Robert Flanders, a former-Associate Justice of the Supreme Court of Rhode Island, represented Caramadre; and Radhakrishnan was represented by Jeffrey Pine, a former-Attorney

General of Rhode Island.  The other two Targets were represented by another pair of excellent defense attorneys.[2]  Flanders and Pine conducted extensive and effective cross-examination of the deponents.

The government has represented that Wiley died in November 2009; Bradshaw died in October 2010; Garvey died in April 2011; Pitocco died in November 2011; and Mizzoni died in January 2012. Rodriguez and Buckman are still living, but it is unknown whether they will be able to testify at trial.

On November 17, 2011, the Grand Jury returned a sixty-six count speaking indictment against Defendants, formally initiating the above-captioned action.  (See generally Indictment, ECF No. 1.)  Two of the four original Targets were not indicted.  The Indictment charges the remaining two Targets, viz., Caramadre and Radhakrishnan, with wire fraud, mail fraud, conspiracy, identity fraud, aggravated identity theft, and money laundering.  The Indictment also charges Caramadre with one count of witness tampering.  At the heart of the Indictment are allegations that Defendants concocted and carried out a scheme to defraud insurance companies by obtaining the identities of terminally-ill people in exchange for payments of several

---

[2] This is of note because, at the depositions, the government and the Targets stipulated that an objection by one Target's attorney would be imputed to each of the Targets. Therefore, Defendants arguably received some benefit from all four of the learned counsel.

thousand dollars and using those identities to procure bonds and variable annuities.

As presaged by the September 2009 Opinion, as trial is approaching, Defendants have moved to suppress the Rule 15 depositions.

II. Discussion

Defendants make the following arguments in support of their motions to suppress the Rule 15 depositions: the depositions were improperly used as a grand jury investigatory tool; Defendants were not provided with adequate notice of the charges against them and the opportunity to perform effective cross-examination, in contravention of their rights under the Sixth Amendment to the U.S. Constitution; the government improperly exaggerated its need for the depositions in September 2009; and the depositions are unduly inflammatory and cumulative of the government's other evidence.[3] As detailed below, none of these arguments hold water. The government adequately preserved Defendants' constitutional rights when the depositions were

---

[3] Defendants have also incorporated the arguments they made before the Court in September 2009 as to the propriety of authorizing Rule 15 depositions before an indictment has issued, including an argument grounded in the Fifth Amendment to the U.S. Constitution. For the reasons stated in the September 2009 Opinion, the Court remains confident that Rule 15 contemplates pre-indictment depositions, under exceptional circumstances and in the interest of justice, and that such a process does not violate the Fifth Amendment. The Court declines to revisit that ruling.

taken, and the prior testimony of the now-unavailable witnesses is admissible at trial pursuant to Rule 804(b)(1) of the Federal Rules of Evidence and Crawford v. Washington, 541 U.S. 36, 57 (2004).[4]

Defendants first argue that the government improperly used the Rule 15 depositions as a grand jury investigatory tool. This argument is easily disposed of. The government has represented to this Court that it did not use the Rule 15 depositions in the Grand Jury. No evidence has been presented, nor credible argument made, that the government's representation is false. Without more than Defendants' bald assertions, the Court must presume that any parallels between the Indictment and the information gleaned from the Rule 15 depositions are the result of other fact-finding efforts by the Grand Jury. See United States v. Flemmi, 245 F.3d 24, 28 (1st Cir. 2001) ("Although the grand jury operates under judicial supervision, it is essentially an independent institution. In recognition of this status, courts afford grand jury proceedings a presumption of regularity." (citing United States v. Johnson, 319 U.S. 503, 513 (1943))).

Defendants next contend that they were not given adequate notice of the nature of the charges to come and that, therefore,

---

[4] Whether those deponents who are still living will be available to testify in person at trial is, of course, an open question that will need to be taken up closer to trial.

7

they did not have an opportunity to conduct an effective cross-examination, in violation of the Sixth Amendment to the U.S. Constitution.

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence." U.S. Const. amend. VI (emphasis added). Insofar as Defendants argue that their Sixth Amendment rights were violated during the taking of the depositions, their argument has no merit. Because there was no "prosecution" or "accused" at the time of the depositions, the Sixth Amendment had not attached for purposes of their right to counsel and notice of the charges against them. See United States v. Boskic, 545 F.3d 69, 82 (1st Cir. 2008) (stating that, while a defendant's Sixth Amendment right to counsel attaches once an indictment is returned, "not every critical pretrial event comes with Sixth Amendment protection [and] the possibility that [such an event] may have important consequences at trial, standing alone, is insufficient to trigger the Sixth Amendment right to counsel" (quoting Moran v. Burbine, 475 U.S. 412, 432 (1986) (second alteration in original) (internal quotation marks omitted))); see also United States v. Hayes, 231

F.3d 663, 676 (9th Cir. 2000) (holding that pre-indictment depositions taken by the government do not trigger a target's Sixth Amendment right to counsel).

Obviously, before indictment there were no actual charges pending against Defendants. Of course, the government did ensure that the Targets had the opportunity to be represented by counsel at the depositions and did provide notice to the Targets of the likely charges because of the need to satisfy, <u>at trial</u>, <u>Crawford</u> and the requirement of Rule 804(b)(1) of the Federal Rules of Evidence. There would have been no Sixth Amendment violation if such notice and counsel had not been provided pre-indictment, but the effort likely would have been for naught because <u>Crawford</u> and Rule 804(b)(1) would have precluded the use of testimony.

Furthermore, admission of the Rule 15 depositions at trial will not violate Defendants' Sixth Amendment confrontation rights. The Sixth Amendment requires that, for witness testimony to be admissible at trial, a defendant must be afforded the opportunity to confront a witness "face to face" and to "subject[ ] him to the ordeal of a cross-examination." <u>Crawford</u>, 541 U.S. at 57. This constitutional right to confrontation dovetails with Rule 804(b)(1) of the Federal Rules of Evidence, which requires that the party against whom prior testimony of an unavailable witness is being offered must have

had a similar (but not necessarily identical) motive to develop the adverse testimony in a prior proceeding. Fed. R. Evid. 804(b)(1); see also United States v. Bartelho, 129 F.3d 663, 671 (1st Cir. 1997).

There is no question that Defendants were given the opportunity to cross-examine the Rule 15 deponents while forewarned of the likely charges on the horizon. Prior to the depositions, the government informed Defendants by letter or in person that it was specifically investigating possible identity theft, aggravated identity theft, mail fraud, and wire fraud charges. Defendant Caramadre confirmed at the hearing that the Targets received notice that the government was investigating mail or wire fraud and that "[t]here was a reference to the using of identity information." Moreover, the government posits that an allegation of conspiracy was so patently obvious from the circumstances – a fraud allegation involving two or more targets working together – that any defense attorney with even a modicum of experience would know this too was on the radar screen. Indeed, Petrozziello objections[5] were made by counsel

---

[5] In the First Circuit, a "Petrozziello objection" refers to a defendant's challenge to the admission of an alleged co-conspirator's statement on the grounds that the statement was not made by a co-conspirator in furtherance of the conspiracy. See United States v. Petrozziello, 548 F.2d 20, 23 (1st Cir. 1977).

for one of the un-indicted Targets, a tangible demonstration that Defendants were indeed thinking about conspiracy charges.[6]

As a practical matter, then, it is clear that Defendants had notice of the likely charges. Obviously, the government could not bring a defendant to stand trial on the basis of charges conveyed through letters and conversations. But this is not the relevant standard; the issue is whether Crawford and 804(b)(1) are satisfied. To ensure the admissibility of pre-indictment depositions at a later trial, the government need only allow Defendants a full and fair opportunity to confront the witnesses against them and to conduct a cross-examination that would satisfy Crawford and Rule 804(b)(1).

There can be no serious question that Crawford and Rule 804(b)(1) were satisfied here. The cross-examinations conducted by Attorneys Flanders and Pine were thorough, detailed, and effective. And Defendants have been unable, even when pressed by the Court at oral argument, to come up with a meaningful subject area that could have been explored or a significant question that could have been asked, but was not, because the depositions were conducted pre-indictment without formal notice

---

[6] Defendants make no argument as to how the factual basis for the Rule 15 depositions touches upon the money laundering and witness tampering charges. Therefore, it appears that Defendants' rights were in no way compromised by the government's failure to notify Defendants of these potential charges.

11

of the charges. Defendant Caramadre, in his reply brief, attempts to set forth areas he may have explored with various deponents if he had access to them now.[7] But this attempt again fails to identify any specific questions that could have been asked and identifies nothing that would have made the cross-examination more meaningful or effective.

In any event, the test is not whether the defendant has been provided with an ideal cross-examination opportunity, one in which his or her attorney has complete knowledge of the evidence and clairvoyant understanding of how the trial will play out. See United States v. Koon, 34 F.3d 1416, 1427 (9th Cir. 1994), rev'd on other grounds, 518 U.S. 81 (1996) ("The failure of a defendant to discover potentially useful evidence at the time of the former proceeding does not constitute a lack of opportunity to cross-examine."). Rather, Crawford simply requires an opportunity to cross-examine witnesses testifying against the accused. 541 U.S. at 57.[8]

---

[7] The Court notes that the parties may wish to take further testimony from Rodriguez in light of the fact that he may still be available to testify.

[8] While the Court has found Defendants' arguments for exclusion unavailing, the Court intends to use its supervisory powers during trial to ensure that evidence is presented in the fairest manner possible. Under Rule 611(a) of the Federal Rules of Evidence, the Court has the duty to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to . . . make those procedures effective for determining the truth." In the spirit of this

Defendants' next argument is that the government exaggerated the need for these depositions in September 2009. Defendants contend that, despite the government's representations to the contrary, there were actually no exceptional circumstances present and the interest of justice did not require taking these depositions. They note that the government brought the Indictment pertaining to other so-called victims' transactions without first securing their depositions.

The Court agrees that it is likely that the Indictment could have been brought in the absence of these witnesses' testimony. But this is beside the point. The Court allowed these depositions to be taken to preserve testimony for trial and because the circumstances presented were truly exceptional: the government was investigating an alleged fraudulent scheme that preyed on the terminally ill, and the testimony of some of the purported victims could only be preserved by way of Rule 15 depositions. Regardless of whether the depositions were necessary to the issuance of the Indictment, it was in the

---

Rule, the Court will structure the testimony of the various witnesses in a way that allows the defense to fill in gaps that may have occurred due to the timing of the depositions. For example, if the video deposition of an unavailable witness is played for the jury and the defense wishes to present the testimony of a related witness, which the defense expects will directly impeach that witness, the Court, if necessary, will consider such a request. Defendants will also be free to designate their cross-examination at trial and/or refrain from presenting to the jury their cross-examination of certain witnesses, if they so choose.

interest of justice that these witnesses' testimony be preserved in these exceptional circumstances.

Finally, to the extent Defendant Caramadre invokes Rule 403 of the Federal Rules of Evidence[9] in arguing that these depositions would be unduly inflammatory and cumulative of other evidence the government could present, this argument can easily be rejected.  Of course, this evidence may well prove to be prejudicial, as often is the case with trial testimony of complaining witnesses and victims; but, the probative value of the testimony of the alleged victims, who often were alone with Defendants during their interactions, clearly outweighs any prejudicial effect.

III. Conclusion

For the foregoing reasons, Defendants' motions to suppress are DENIED.

IT IS SO ORDERED.

*/s/ William E. Smith*
William E. Smith
United States District Judge
Date:  May 15, 2012

---

[9] Rule 403 provides:

The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.