UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                  )
UNITED STATES OF AMERICA          )
                                  )
        v.                        )       CR. No. 11-186 S
                                  )
JOSEPH CARAMADRE; and             )
RAYMOUR RADHAKRISHNAN,            )
                                  )
              Defendants.         )
_____)

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, United States District Judge.

    Before the Court is the government's motion to disqualify
Anthony Traini, Esq. from serving as Defendant Joseph
Caramadre's co-counsel based on a purported conflict of
interest. For the reasons articulated below, the government's
motion is denied.[1]

I.   Background[2]

    Defendant Caramadre has been charged with sixty-six counts,
including wire fraud, mail fraud, conspiracy, identity fraud,
aggravated identity theft, money laundering, and witness

_____

    [1] The Court denied the motion in an Order shortly after
argument (ECF No. 71); this Memorandum explains the reasons for
this decision.

    [2] The facts set forth in the Memorandum are derived from the
representations of counsel in their briefs, testimony in open
court (regarding the knowledge and voluntariness of the various
waivers and the parties' understanding of the risks), as well as
the <u>in camera</u> review of documents supplied by counsel.

tampering, in connection with an investment scheme in which Caramadre and co-Defendant Raymour Radhakrishnan allegedly victimized elderly and terminally-ill individuals.

The government's motion to disqualify Attorney Traini arises out of Traini's representation of Edward Maggiacomo, Jr., a former target in the government's investigation and a key witness in the government's case. Maggiacomo is a licensed insurance broker who has worked with Caramadre since 1995 and was involved in Caramadre's alleged investment scheme. He is named in the indictment as an unindicted co-conspirator.

Maggiacomo entered into a non-prosecution agreement with the government on May 6, 2011. He then testified before the grand jury on June 16, 2011, about his knowledge of and involvement in Defendants' allegedly fraudulent investment scheme. Traini negotiated the non-prosecution agreement on Maggiacomo's behalf, and he represented Maggiacomo throughout the grand jury proceedings.[3] Maggiacomo has since retained Attorney Bethany Macktaz to represent him for the remainder of this criminal proceeding.

Though Traini no longer represents Maggiacomo in the instant case, Traini continues to represent Maggiacomo in civil

---

[3] The government asserts that Traini's representation of Maggiacomo dates back to at least 2009.

proceedings[4] and in a Securities and Exchange Commission ("SEC") investigation related to the investment scheme. The civil suits have been stayed pending the resolution of this criminal matter and the government has informed the Court that the SEC investigation is ongoing. (Gov't Mot. to Disqualify Hr'g Tr. 17, July 25, 2012.)

At some time prior to June 2012, Caramadre asked Traini to assist his lead counsel, Attorney Michael Lepizzera, in his representation. Given the looming November 2012 trial start date, Caramadre sought Traini's assistance for his defense due to Traini's familiarity with the facts and law of the case.

Before agreeing to represent Caramadre, Traini first sought to obtain a conflict waiver from Maggiacomo. Traini contacted Maggiacomo and thoroughly discussed with him the potential conflicts that could arise if Traini represented Caramadre in the trial at which Maggiacomo is expected to testify. Traini explained the pertinent Rules of Professional Conduct, and set forth the limitations on his representation of Caramadre, namely that Traini would not participate in the cross-examination of Maggiacomo, assist Attorney Lepizzera in his preparations for cross-examining Maggiacomo, nor make any statements about

---

[4] Traini currently represents Maggiacomo in two related civil suits: <u>Transamerica Life Ins. Co. v. Caramadre</u>, C.A. No. 09-471 S (D.R.I. filed Oct. 2, 2009) and <u>Transamerica Life Ins. Co. v. Lifemark Sec. Corp.</u>, C.A. No. 09-549 S (D.R.I. filed Nov. 16, 2009).

Maggiacomo's credibility during opening statements and closing arguments. After Maggiacomo consulted with independent counsel, Traini obtained Maggiacomo's oral consent, which he later confirmed in a letter detailing their previous conversations and requesting Maggiacomo's written consent.

Upon receiving Maggiacomo's written consent, Traini discussed with Lepizzera and Caramadre the potential conflicts that may arise from the representation. Traini explained that the attorney-client privilege prevented him from disclosing any confidential information he learned while representing Maggiacomo and that if Maggiacomo was called to testify against Caramadre, Traini would not cross-examine him, nor would he assist Lepizzera with his preparations for cross-examining Maggiacomo. After Lepizzera and Caramadre discussed these potential issues and limitations, Caramadre provided his written consent accepting the role Traini would play as co-counsel.

By the time Traini entered his appearance on behalf of Caramadre on June 14, 2012, both Maggiacomo and Caramadre had executed written conflict of interest waivers. Additionally, Traini represented to the Court that he has no impeachment information about Maggiacomo or information on Maggiacomo's involvement in this case that was not previously disclosed to the government. Traini further maintains that Maggiacomo has not waived the attorney-client privilege, nor is Maggiacomo

required to waive such privilege in order for Traini to represent Caramadre.

The government filed its motion to disqualify Traini on June 18, 2012. Following extensive briefing by the parties, argument was held on July 25, 2012. During the hearing, the Court conducted an extensive inquiry of Caramadre and Maggiacomo regarding their waivers of the conflict associated with Traini's representation of Caramadre.

In addition, Lepizzera and Traini submitted documents at the hearing for in camera review. These documents detail the comprehensive process Traini and Lepizzera engaged in to ensure that Caramadre's and Maggiacomo's waivers were knowing and voluntary.

II. Discussion

In support of its motion, the government sets forth several grounds for the disqualification of Attorney Traini. First, the government asserts that Traini's conflict of interest is so egregious that it is unwaivable, given Maggiacomo's position as a key government witness. Second, the government argues that the "Chinese Wall" proposed by defense counsel to insulate Traini from matters involving Maggiacomo's credibility does not cure the conflict. Third, the government maintains that both Caramadre and Maggiacomo will be prejudiced if Traini is allowed to represent Caramadre, as Traini necessarily must either betray

his duty of loyalty to Maggiacomo or provide ineffective assistance to Caramadre. Lastly, the government cites a host of ethical considerations in support of its contention that the Court must disqualify Traini in order to preserve the integrity of the adversarial process.

Caramadre objects to the government's motion to disqualify, asserting his Sixth Amendment right to choice of counsel. Caramadre maintains that the various Rules of Professional Conduct cited by the government are inapplicable. He also contends that the government has failed to show an actual or potential conflict of interest and, thus, Traini's representation of Caramadre does not undermine the integrity of the proceedings. However, the core of Caramadre's opposition is based upon his and Maggiacomo's knowing, intelligent, and voluntary waivers of any conflict, which he asserts are sufficient to protect their rights.

To begin, it must be remembered that we are dealing with a Defendant's exercise of a Constitutional right. In criminal prosecutions, the Sixth Amendment guarantees a defendant the right "to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. Moreover, the United States Supreme Court has interpreted the Sixth Amendment right to counsel to include a criminal defendant's right to secure counsel of his choice. Powell v. Alabama, 287 U.S. 45, 53 (1932). Accordingly, the

Court must give considerable deference to a defendant's choice of counsel, <u>United States v. Panzardi Alvarez</u>, 816 F.2d 813, 816 (1st Cir. 1987), and disqualification of counsel "should be a measure of last resort." <u>In re Grand Jury Proceedings</u>, 859 F.2d 1021, 1026 (1st Cir. 1988) (internal quotation marks and citation omitted) (holding that, in the absence of evidence of an actual or serious potential conflict of interest, the district court should not disqualify a defendant's counsel of choice).

The Sixth Amendment right to effective counsel includes "a correlative right to representation that is free from conflicts of interest." <u>Wood v. Georgia</u>, 450 U.S. 261, 271 (1981) (citing <u>Cuyler v. Sullivan</u>, 446 U.S. 335 (1980); <u>Holloway v. Arkansas</u>, 435 U.S. 475 (1978)). Thus, the Sixth Amendment right of criminal defendants to choice of counsel is necessarily limited in some respects. <u>Wheat v. United States</u>, 486 U.S. 153, 159 (1988). One such limitation is that a defendant cannot insist on representation by "an attorney who has a previous or ongoing relationship with an opposing party, even when the opposing party is the Government." <u>Id.</u>

Where a defendant's selection of counsel might give rise to a conflict of interest, the Court must investigate the conflict to determine if different counsel is warranted. <u>Id.</u> at 160. The Court may disqualify counsel if there exists an actual

7

conflict or <u>a serious potential for conflict</u>, which may or may not become an actual conflict as the case proceeds. <u>In re Grand Jury</u>, 859 F.2d at 1024 (citing <u>Wheat</u>, 486 U.S. at 164).

The Court may allow a conflicted attorney to continue representing a defendant if the defendant has made a knowing, voluntary, and intelligent waiver of the conflict of interest. <u>Mountjoy v. Warden, N.H. State Prison</u>, 245 F.3d 31, 36 (1st Cir. 2001). However, the Court has "substantial latitude in refusing waivers of conflicts of interest." <u>Wheat</u>, 486 U.S. at 163.

Further, the Court has an independent interest in protecting the integrity of the judicial process and maintaining the appearance of propriety to those who observe court proceedings. <u>Id.</u> at 160. The Court likewise has a duty to supervise the professional conduct of the attorneys appearing before it. <u>Kevlik v. Goldstein</u>, 724 F.2d 844, 847 (1st Cir. 1984).

The Rules of Professional Conduct adopted by the Rhode Island Supreme Court (the "Rules") are applicable in this Court. <u>See</u> DRI LR Gen 208. Relevant to this disqualification motion is Rule 1.7, which provides:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.

R.I. Supreme Court Rules 1.7.

Rule 1.9 sets forth attorneys' duties to former clients and is relevant to the case at bar due to Traini's prior representation of Maggiacomo during the grand jury investigation that led to Caramadre's indictment. It provides in pertinent part:

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

R.I. Supreme Court Rules 1.9(a).

The issue presented in this case is whether the Court should reject the parties' waivers and disqualify Attorney Traini from representing Caramadre. The Court finds that disqualification is unnecessary because (1) Traini's representation of Caramadre does not violate the Rules of Professional Conduct; (2) both Maggiacomo and Caramadre have executed knowing, voluntary, and intelligent waivers of any actual or potential conflicts of interest; and (3) the integrity of the proceedings will not be compromised by Traini serving as Caramadre's co-counsel.

A.   No Violation of the Rules of Professional Conduct

It is clear that a conflict of interest under Rule 1.7(a)(2) arises from Traini's concurrent representation of Maggiacomo and Caramadre.[5] Traini's concurrent representation of Maggiacomo in the related civil suits and SEC investigation materially limits his representation of Caramadre here because Traini cannot zealously advocate for Caramadre to the extent it

---

[5] In its motion, the government argues that Maggiacomo and Caramadre are in "utterly antagonistic positions" such that Traini's representation of Caramadre would be directly adverse to Maggiacomo's interests, which would establish a conflict of interest under Rule 1.7(a)(1). (Gov't Mot. to Disqualify 20, ECF No. 61.) As the Court pointed out at the hearing on this motion, the government's implication that Maggiacomo is on its side is misguided. It is quite plausible that Maggiacomo entered into a non-prosecution agreement with the government because he believed it was in his best interests, while simultaneously having no desire to see Caramadre or Radhakrishnan convicted.

would be to the detriment of Maggiacomo, lest Traini violate his duty of loyalty to Maggiacomo. <u>See</u> Rule 1.7 cmt. 1 ("Loyalty and independent judgment are essential elements in the lawyer's relationship to a client."). Thus, Traini himself has set forth limitations on his representation of Caramadre.

Nonetheless, the Court may allow Traini to represent both Maggiacomo and Caramadre because the representation meets the four criteria set forth in Rule 1.7(b). First, the Court is satisfied that Traini is able to provide both clients with competent and diligent representation. Given Traini's familiarity with the case and the fast-approaching trial date, Traini is arguably the attorney best-suited to serve as co-counsel for Caramadre. With respect to Maggiacomo, the Court has stayed the related civil suits in which Traini continues to represent him pending the completion of this criminal proceeding; therefore, Traini's work on Caramadre's case will not prevent him from competently and diligently representing Maggiacomo.[6] Second, the law does not prohibit Traini's concurrent representation of Caramadre and Maggiacomo. Third,

---

[6] The government's argument that Traini's representation of Caramadre has already compromised his representation of Maggiacomo in the civil suits because the civil plaintiffs will not enter into settlement negotiations with Maggiacomo now is a red herring. The decision of the civil plaintiffs to enter into settlement talks with Maggiacomo is not relevant to the propriety of Traini representing Caramadre in this criminal proceeding.

Traini is not representing Maggiacomo in this proceeding, as Maggiacomo has retained Attorney Macktaz to represent him if he testifies at Caramadre's trial. Nor do Maggiacomo and Caramadre have claims against each other in any of the proceedings in which they are involved. Fourth, the requirement that each affected client give informed consent in writing is met because both Maggiacomo and Caramadre have consented to the representation in a high-quality waiver, discussed infra.

Furthermore, it is debatable whether Rule 1.9(a), which addresses an attorney's duties to former clients, is also at play in this disqualification motion. Traini no longer represents Maggiacomo in his role as a potential government witness in the instant criminal case, though Maggiacomo is Traini's current client. However, the language "formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter" seems to pertain to the situation at bar. Rule 1.9(a). The potential for a violation of this ethical rule is briefly discussed for the sake of completeness.

If Maggiacomo is considered Traini's former client for the purposes of this matter, then Traini shall not represent Caramadre under Rule 1.9(a) because Caramadre's interests are materially adverse to those of Maggiacomo. Maggiacomo has an interest in appearing credible when he testifies and Caramadre's

defense strategy will likely involve attacking Maggiacomo's credibility. Despite this conflict, Maggiacomo, the former client, has given his informed consent in writing,[7] rendering Traini's representation of Caramadre permissible.

It should be noted that the government's reliance on <u>In re Grand Jury Proceedings</u>, 859 F.2d 1021, 1025-26, (1st Cir. 1988) for the proposition that Traini's representation of both clients necessarily results in him violating his ethical obligations by either betraying his duty of loyalty to Maggiacomo or providing ineffective assistance to Caramadre, is flawed. The limitations on Traini's representation (the so-called "Chinese Wall") to which Maggiacomo and Caramadre have agreed modified Traini's ethical duties such that it is possible for him to fully comply.

The government cites several cases in which courts rejected the erection of a "Chinese Wall" as a solution to conflicts of interest. <u>See, e.g.</u>, <u>United States v. Sanchez Guerrero</u>, 546 F.3d 328 (5th Cir. 2008); <u>United States v. Gharbi</u>, 510 F.3d 550 (5th Cir. 2007); <u>United States v. Williams</u>, 81 F.3d 1321 (4th Cir. 1996); <u>United States v. Stites</u>, 56 F.3d 1020 (9th Cir. 1995). The rationale behind the courts' rejection of the "Chinese Wall" solution in these cases amounts to a distrust of the conflicted attorney. <u>See, e.g.</u>, <u>Sanchez-Guerrero</u>, 546 F.3d

---

[7] Based on documents submitted by Attorney Traini to the Court for <u>in camera</u> review, the Court is satisfied that Maggiacomo has provided informed consent in writing.

at 334 (citing <u>Gharbi</u>, 510 F.3d at 553) (noting that defense team could "pull punches" in cross-examining conflicted attorney's former client); <u>Gharbi</u>, 510 F.3d at 553 (same); <u>Williams</u>, 81 F.3d at 1325 ("Significant, unavoidable risks would have remained. After all, [conflicted counsel] would remain at counsel table and likely be the auxiliary lawyer's chief source of information about the case."); <u>Stites</u>, 56 F.3d at 1025 ("The Chinese wall might have crumbled."). To the contrary, Traini has represented that he will not provide Attorney Lepizerra with any confidential information he obtained through his representation of Maggiacomo or otherwise violate his ethical duties to both Maggiacomo and Caramadre. Without evidence to the contrary, this Court will rely upon the good faith and judgment of counsel. <u>See</u> <u>United States v. Rivera-Hernandez</u>, 332 F. Supp. 2d 423, 433 (D.P.R. 2004) (noting that the statements of attorneys, who are members of the Bar and knowledgeable of their duties to clients and the court, must be credited absent evidence to the contrary); <u>see also</u> <u>Cuyler</u>, 446 U.S. at 347 (noting that courts may rely on the good faith and good judgment of defense counsel).

The limitations placed on Traini's representation of Caramadre, in conjunction with Maggiacomo's and Caramadre's waivers of any conflicts of interest, are sufficient to address

the ethical considerations associated with Traini serving as Caramadre's co-counsel.

B.   Knowing, Intelligent, and Voluntary Waiver of Conflicts

In addition to documents submitted by Traini attesting that he had obtained informed consent from both clients before agreeing to serve as co-counsel for Caramadre, the Court's questioning of Caramadre and Maggiacomo in open court confirms that both clients have knowingly, intelligently, and voluntarily waived any conflicts of interest that may arise from Traini's representation of Caramadre in this criminal case.

The Court's inquiry of Caramadre established that he understands the following:  (1) Traini intends to continue to represent Maggiacomo in the civil proceedings and the SEC investigation; (2) Maggiacomo is likely to be called as a witness against Caramadre in the instant case; (3) the Rules of Professional Conduct impose certain limitations upon Traini's representation of Caramadre, including that Traini will not participate in the cross-examination of Maggiacomo, Traini will not make any remarks during opening statements and closing arguments regarding Maggiacomo's credibility, and Traini will not disclose any confidential information he learned in the course of his representation of Maggiacomo; (4) the Court may not allow both of Caramadre's defense attorneys to present opening statements or closing remarks; and (5) information could

come to light that would result in Traini ceasing his representation of Caramadre during trial or Maggiacomo could withdraw his consent to the representation altogether.

Additionally, Caramadre confirmed that he had the opportunity to discuss these conflict issues with counsel other than Traini. Concluding, Caramadre acknowledged that he knowingly and voluntarily waived his right to conflict-free counsel and, thus, waived his right to mount a collateral attack on the conflict-free aspect of Traini's representation.

Likewise, the Court's inquiry of Maggiacomo demonstrates that he understands the following: (1) Traini has ceased representing him in his capacity as a potential witness in this case but intends to continue to represent him in the civil suits and SEC investigation; (2) he is not being asked to waive the attorney-client privilege; (3) Traini will be part of a defense team that will likely attack his credibility; however, Traini will not be allowed to participate in the cross-examination of him, nor will Traini argue to the jury regarding his credibility; (4) new, unanticipated conflicts may arise that could cause Traini to terminate his representation of him in the civil suits and the SEC investigation; (5) the Court might not allow him to change Maggiacomo's mind mid-trial about consenting to Traini's representation of Caramadre; and (6) changing his attorney in the middle of the case may have a harmful impact,

particularly with regard to his compliance with the non-prosecution agreement.

Maggiacomo also verified that he had acquired new counsel to represent him in his capacity as a witness in this case and that no one had threatened him or promised him anything in exchange for his consent. Maggiacomo waived any potential conflict of interest and consented to Traini representing Caramadre in this criminal case.

The government argued that it was "fundamentally coercive" to ask Maggiacomo to consent to Traini representing Caramadre and suggested that it was not in Maggiacomo's best interests to allow Traini to represent Caramadre. (Hr'g Tr. 7.) However, the government has not provided any evidence that Maggiacomo's consent was involuntary or uninformed, nor is it for the government to decide what is in Maggiacomo's best interests.

The Court predicates its acceptance of these waivers upon three key elements. First, the sophistication of the parties making the waiver is not lost on the Court. Caramadre is a member of the Bar and, as such, is versed in the Rules of Professional Conduct. Maggiacomo is an educated businessman and his father is a prominent attorney. Of those who come before this Court as criminal defendants, these two men are among the best equipped to understand the consequences of making such a waiver. Second, Caramadre and Maggiacomo both consulted with

attorneys other than Traini before giving consent to the representation at issue here. Third, the Court went through various "worst-case scenarios" with both Caramadre and Maggiacomo to ensure they understood that problematic situations could emerge later in the proceedings that are not now contemplated.

Moreover, the process by which Traini obtained informed consent is consistent with the process approved in a factually analogous case, United States v. Gingras, No. CR. 02-47-1-M, 2002 WL 31106609 (D.N.H. Sept. 23, 2002). In Gingras, the conflicted attorney had previously represented a potential government witness during the witness's testimony before the grand jury. Id. at *1. Because of his testimony, the witness was no longer subject to criminal liability for all practical purposes. Id. When the defendant later asked the conflicted attorney to assist his lead counsel, the conflicted attorney first consulted with the witness, informed him of the potential conflict and limitations that would be imposed upon his representation of the defendant, encouraged the witness to consult with independent counsel, and eventually obtained the witness's written consent. Id. The conflicted attorney then went through the same process with the defendant before the defendant signed the written consent agreement, acknowledging the attorney's limited role in his defense. Id. at *2.

Emphasizing the informed nature of the consent, the _Gingras_ court found that this process of obtaining consent and the limitations on the conflicted attorney's representation fully protected the former client's attorney-client privilege while not interfering with the defendant's right to effective assistance of counsel. _Id._ at *5. In an attempt to distinguish Caramadre's case from _Gingras_, the government highlights many distinctions, including that the _Gingras_ witness had been given immunity whereas Maggiacomo has signed a non-prosecution agreement, and that the conflicted attorney in _Gingras_ had ceased representing the witness long before the motion to disqualify was filed while Traini continues to represent Maggiacomo in the civil suits. The Court finds these distinctions to be without meaningful differences. Here, the relationships between the affected parties mirror those in _Gingras_, and Traini followed the same steps to obtain conflict waivers before agreeing to represent Caramadre. Like the court in _Gingras_, this Court finds the procedure to be adequate to protect both clients' rights and, as such, disqualification of Traini is not warranted.

The government has also vigorously argued that this case is so uniquely conflict-laden such that the Court should not accept the waivers proffered by Maggiacomo and Caramadre. The government cites numerous cases in which attorneys were

19

disqualified based on conflicts of interest arising from concurrent and successive representation.  See, e.g., United States v. Alfonzo-Reyes, 592 F.3d 280 (1st Cir. 2010) (affirming the disqualification of an attorney who previously represented a potential government witness who was willing to waive the attorney-client privilege because the conflicted attorney might have to cross-examine the witness); United States v. Lanoue, 137 F.3d 656 (1st Cir. 1998) (affirming the disqualification of an attorney who represented a co-defendant who was acquitted of all charges during the first trial because the co-defendant might be called as a witness against the defendant); United States v. Lemieux, 532 F. Supp. 2d 225 (D. Mass. 2008) (disqualifying an attorney who had briefly represented a co-defendant).  However, for the reasons outlined above, the Court finds that an egregious conflict warranting rejection of the waivers does not exist in this case.  The conflicts of interest have been knowingly, intelligently, and voluntarily waived.

C.   The Integrity of the Trial Process is Not Undermined

Another predominant government argument is that the Court must disqualify Traini from representing Caramadre because the representation threatens the integrity of the trial process. The government contends that, to an outsider observing these proceedings, it would appear that by allowing Caramadre to retain Traini, the Court is permitting a criminal defendant "to

purchase the services of the attorney of a chief witness against him, together with the knowledge that [the] attorney has received from that witness and the government." (Gov't Mot. to Disqualify 12.) The government also maintains that allowing Traini to serve as co-counsel to Caramadre is inviting Caramadre to make a claim of ineffective assistance of counsel should he be convicted at trial.

The Court finds that no impropriety, actual or perceived, would result from Traini assisting Attorney Lepizzera with Caramadre's defense for two key reasons. First, Caramadre understands and accepts the limitations on Traini's representation of him, and second, Lepizzera, as lead counsel, is primarily responsible for and capable of providing Caramadre's defense. See Gingras, 2002 WL 31106609, at *5 (holding that there is no appearance of impropriety of institutional significance because the defendant understands the limitations on the conflicted attorney's representation of him and the lead attorney is responsible for and capable of providing independent and conflict-free representation). Caramadre testified that he is comfortable with Lepizzera serving as sole counsel if something were to happen down the

road that required Traini to cease representing him.[8] (Hr'g Tr. 42-43.)

The Court further finds that there are additional factors that nullify any arguments about the representation undermining the integrity of the trial process. With regard to the government's concern for preserving the appearance of propriety, the Court held a hearing on this disqualification motion, at which the Court inquired of both Maggiacomo and Caramadre to ensure they understood the potential consequences of their waivers of any conflict of interest in open court. Both Maggiacomo and Caramadre testified that they were making knowing, intelligent, and voluntary waivers of the conflict.

With respect to the Court's interest in protecting the rights of criminal defendants and unindicted co-conspirators in criminal proceedings, the Court is satisfied that both Maggiacomo's and Caramadre's rights have been adequately safeguarded. Maggiacomo has not waived his right to attorney-client privilege. Likewise, Caramadre is not prejudiced by Maggiacomo's exercise of the attorney-client privilege because Caramadre is not entitled to such information regardless of who represents him. Furthermore, Caramadre testified that he

---

[8] Attorney Scott DeMello has also entered an appearance on behalf of Caramadre. Attorney DeMello is a member of Lepizzera's law firm.

understood he was waiving a future claim of ineffective assistance of counsel with regard to Traini's representation of him, rendering moot the government's argument that allowing Traini to serve as Caramadre's co-counsel was inviting a claim of ineffective assistance of counsel.

Lastly, it should not be forgotten that to unnecessarily deprive Caramadre of his Sixth Amendment right to choice of counsel would certainly threaten the integrity of the judicial process, particularly here where Caramadre has numerous serious charges lodged against him. The Court finds that the facts of Traini's representation of Caramadre in the instant criminal matter do not warrant disqualification of Attorney Traini.

III. Conclusion

For the foregoing reasons, the government's motion to disqualify Attorney Traini is DENIED.

IT IS SO ORDERED.


*/s/ William E. Smith*
William E. Smith
United States District Judge
Date: September 20, 2012